Filed 11/30/23  P. v. Lewis CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E079660 |
| v. | (Super.Ct.No. FSB20003711) |
| TYSHAWN MICHAEL LEWIS, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Alexander R. Martinez, Judge.  Affirmed.

Jean Matulis, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson and Christine Y. Friedman, Deputy Attorneys General, for Plaintiff and Respondent.

1

A jury convicted Tyshawn Michael Lewis of first degree murder. (Pen. Code, § 187, subd. (a); unlabeled statutory references are to this code.) Lewis argues that the trial court committed reversible error by (1) not ordering a competency hearing under section 1368, because there was substantial evidence that he was not competent to stand trial; and (2) failing to advise him of his right to testify and failing to secure an express, personal waiver on the record of that right. We reject both arguments and affirm the judgment.

BACKGROUND

In September 2020, Lewis killed Sidney Treadway by shooting him five or six times at close range. Lewis was identified as the shooter during the police investigation and at trial by an eyewitness who was standing next to Treadway when he was shot.

A jury convicted Lewis of first degree murder (§ 187, subd. (a)) and found true the allegations that he personally used a firearm causing death (§ 12022.53, subds. (b)-(d)) and that he suffered a prior strike conviction (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)). The court sentenced him to 75 years to life in state prison.

DISCUSSION

Lewis contends that the trial court committed reversible error by (1) failing to suspend trial and institute competency proceedings under section 1368 after defense counsel raised a doubt as to Lewis's competence, and (2) failing to advise Lewis of his right to testify and failing to obtain an express waiver of that right from Lewis. Both contentions lack merit.

A.      *Relevant Proceedings*

After the prosecution concluded its case-in-chief on May 26, 2022, the trial court asked defense counsel whether Lewis would be testifying, as counsel had previously indicated.  The court gave counsel time to discuss the issue with Lewis.

After conferring with Lewis off-the-record, counsel raised a doubt as to Lewis's competency to stand trial under section 1368.  Counsel confirmed that he had the opportunity to discuss with Lewis whether he would testify and that Lewis said that he did not want to testify.  According to counsel, he and Lewis had previously agreed to a legal strategy of self-defense and that Lewis would testify.  Counsel had agreed to go over questions that he would ask Lewis and questions that he anticipated that the prosecutor would ask.  (Counsel did not indicate whether such preparations had occurred.)  Counsel noted that Lewis had first informed him that morning that he was not going to testify, but Lewis did not explain why.

Counsel "noticed a marked difference" in Lewis "mentally, as well as physically to some extent."  Lewis had spoken with counsel "[v]ery little" that day, would not respond to "a lot" of counsel's questions, for the most part did not make eye contact with counsel, and instead "just look[ed] down."  Counsel indicated that Lewis's "total inability to respond to [counsel] and tell [counsel] why he won't testify" was "extremely frustrating, to put it mildly."  Lewis had previously provided counsel "a lot of written notes" concerning evidentiary issues and had spoken with counsel the previous Monday about relying on a self-defense strategy.  Counsel stated that Lewis "had some mental

3

issues in the past when he was incarcerated in various state prisons with regard to his priors," but counsel did not provide any additional information about those issues.

The court suspected that Lewis was "faking it" to delay the proceeding. The court noted that in July 2021 Lewis had spoken "at length" at a hearing under *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*) and articulated why he wanted the hearing. The court inquired whether Lewis had "actually" told counsel that day that "he had changed his mind and he did not wish to testify," and counsel confirmed that Lewis "said that several times." During the course of the hearing, the court asked Lewis two questions directly—whether Lewis had communicated with counsel that day and whether he wanted a mistrial declared to hold a competency hearing–but Lewis did not answer either question. The court continued the matter to the following week.

During the next hearing on May 31, 2022, defense counsel informed the court that he had "attempted to confer with" Lewis, but "all [he] got was a nod of the head when [counsel] asked [Lewis] if he still wished not to testify." Counsel clarified that Lewis had "nodded his head, and he was standing by his decision not to testify."

Counsel said that he still had doubts about Lewis's mental competence because of Lewis's sudden refusal to speak with counsel and Lewis's prior "mental issues." According to counsel, Lewis's refusal to speak with him represented "an abrupt change" from his prior engagement. Counsel indicated that Lewis otherwise had been involved in the trial and had assisted in jury selection.

4

The court had a copy of Lewis's rap sheet, including a criminal history dating back to 1999.  Defense counsel agreed with the court that the rap sheet did not include any "entries from 1999 to now of any [section] 1368 proceedings, institutionalizations in mental facilities, NGIs, [or] any kind of mental disordered diversions."  Lewis's attorney submitted on the information before the court.

The court concluded that Lewis had not carried his burden of providing the court with "objective substantial evidence of doubt about [Lewis's] mental competence."  Because the court also did not have an independent doubt concerning Lewis's competence, the court declined to suspend the trial to hold a competency proceeding under section 1368.

The court explained that its conclusion was based on the following considerations: (1) Lewis's criminal history did not reflect any previous mental health issues; (2) Lewis had appeared in court a total of 77 times in the current case and a companion case, no issue had ever been raised about his competence, and there were not "any statements or behaviors of the defendant that could raise a question about competency"; (3) during the July 2021 *Marsden* hearing, Lewis "was articulate and able to communicate with the Court and address his concerns and complaints and respond to questions, and there was absolutely no indication whatsoever of any mental issue or incompetency"; (4) the court had not received any reports, letters, statements, or any other evidence from Lewis or his friends or relatives concerning mental conditions that he had, counseling he had received, or psychiatric medication he had taken; (5) the trial judge "personally observed [Lewis]

every day during the trial, and he ha[d] been sitting normally, wearing appropriate clothing—including [that day]—and ha[d] properly obeyed deputy instructions on every single appearance"; (6) Lewis had "not engaged in odd behavior during the trial"—he had not mumbled, spoken to himself, hurt himself, or engaged in any other concerning behavior; (7) when the court was hearing motions in limine, defense counsel indicated that Lewis was actively participating in plea negotiations with the prosecution "by hearing and rejecting the People's offers and verbally expressing a counteroffer to be made to the prosecutor"; (8) Lewis agreed on the record on the first day of trial to postpone the trial for one day so that he could acquire proper clothing; (9) about 10 days before Lewis's change in behavior, he personally waived his right to a speedy trial in the companion case; (10) the trial judge observed Lewis interacting appropriately with counsel during jury selection by "engaging actively with counsel [and] conversing with him regarding peremptory challenges," and during the prosecution's case-in-chief, the court did not observe anything "out of the ordinary that would in any way raise a doubt as to [Lewis's] competence"; (11) "the very first time in the entire history of this case that [Lewis] stopped speaking entirely with his defense counsel" happened to be the day that Lewis was expected to testify, but on that same day, after the jury was excused, the court saw Lewis "interact with and follow the verbal directions of the custody officer . . . in the same completely normal and usual manner just as before"; and (12) since that day, "after being directly asked by counsel if it was still his decision to not testify in this case, [Lewis] nodded his head in the affirmative."

After the court issued its ruling, the court indicated that because Lewis was not going to testify, the jury instructions would need to be modified so that the jury would not be instructed on self-defense or manslaughter.

The following colloquy between the trial judge and Lewis occurred:

THE COURT: "For the record, Mr. Lewis, is it your decision to—are you making a decision whether or not you are not planning to testify today? Did you change your mind? Wish to testify or not going to testify?

"THE DEFENDANT: (No audible response.)

"THE COURT: Hearing no response—the defendant has not given any verbal response, nor shaken or nodded his head. The Court is going to interpret that he's exercising his constitutional rights not to testify, and, therefore, will not be testifying."

The court then asked defense counsel if he had any arguments or comments to make concerning the court's proposed modifications of the instructions, and counsel responded that he did not. Counsel stated: "And I'm going to have to live with the evidence presented thus far." The defense rested without presenting any evidence.

B. *Competency to Stand Trial*

The federal and state "constitutional guarantee of due process forbids a court from trying or convicting a criminal defendant who is mentally incompetent to stand trial." (*People v. Rodas* (2018) 6 Cal.5th 219, 230.) Under section 1368, a criminal proceeding must be suspended if, before judgment, "a doubt arises in the mind of the judge as to the mental competence of the defendant." (§ 1368, subd. (a); *People v. Mickel* (2016) 2

7

Cal.5th 181, 201 (*Mickel*).) "Section 1367 of the Penal Code, incorporating the applicable constitutional standard, specifies that a person is incompetent to stand trial 'if, as a result of mental disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner.'" (*Rodas*, *supra*, at p. 230; § 1367, subd. (a).) A trial court is required to order a section 1368 hearing if the court is presented with substantial evidence of mental incompetence. (*Rodas*, at pp. 231-232; *People v. Bloom* (2022) 12 Cal.5th 1008, 1030 (*Bloom*).) "Absent substantial evidence of a defendant's incompetence, 'the decision to order such a hearing [is] left to the court's discretion.'" (*People v. Panah* (2005) 35 Cal.4th 395, 432 (*Panah*).)

When "'a qualified mental health expert who has examined the defendant "'states under oath with particularity that in his [or her] professional opinion the accused is, because of mental illness, incapable of understanding the purpose or nature of the criminal proceedings being taken against him or is incapable of assisting in his defense or cooperating with counsel,'" that is substantial evidence of incompetence.' [Citation.] But absent such testimony, no single factor is necessary to establish sufficient doubt of a defendant's competence as to require a hearing. Rather, a court must consider the 'aggregate of th[e] indicia' of the defendant's competence. [Citation.] 'Evidence of incompetence may emanate from several sources, including the defendant's demeanor, irrational behavior, and prior mental evaluations. [Citations.]' [Citation.] But the evidence must bear on the defendant's competency to stand trial, rather than simply

8

establish the existence of a mental illness that could conceivably affect his ability to understand the proceedings or assist counsel.  [Citation.]  '[M]ore is required to raise a doubt than mere bizarre actions [citation] or bizarre statements [citation] or statements of defense counsel that [the] defendant is incapable of cooperating in his [or her] defense [citation] or psychiatric testimony that [the] defendant is immature, dangerous, psychopathic, or homicidal or such diagnosis with little reference to [the] defendant's ability to assist in his [or her] own defense.'"  (*People v. Ghobrial* (2018) 5 Cal.5th 250, 270 (*Ghobrial*).)

The trial court's decision on whether to order a competency hearing ""'may be disturbed upon appeal 'only where a doubt as to [mental competence] may be said to appear as a matter of law or where there is an abuse of discretion.''""  (*Bloom*, *supra*, 12 Cal.5th at p. 1030.)  We review the trial court's decision to determine ""'whether there was substantial evidence raising a reasonable doubt concerning the defendant's competence to stand trial.'""  (*Ibid.*)  "Failure to declare a doubt and to conduct a competency hearing when there is substantial evidence of incompetence requires reversal of the judgment."  (*People v. Blair* (2005) 36 Cal.4th 686, 711 (*Blair*), overruled on another ground by *People v. Black* (2014) 58 Cal.4th 912, 919 (*Black*).)  When there is not "a showing of 'incompetence' that is 'substantial' as a matter of law, the trial judge's decision not to order a competency hearing is entitled to great deference, because the trial court is in the best position to observe the defendant during trial."  (*People v. Mai* (2013) 57 Cal.4th 986, 1033 (*Mai*).)

9

Lewis contends that the trial court was required to order a competency hearing as a matter of law because there was substantial evidence of Lewis's incompetence to stand trial. Lewis does not otherwise contend that the trial court abused its discretion by not ordering such a hearing. We accordingly analyze only whether the evidence of Lewis's incompetence was sufficient to obligate the trial court to order a competency hearing. Lewis contends that there was substantial evidence of his incompetence because (1) his trial counsel declared a doubt; (2) Lewis suddenly refused to communicate with counsel and decided not to testify, leaving his self-defense theory with no evidentiary support; and (3) defense counsel indicated that at some unspecified point in the past Lewis had mental health issues while in prison. We disagree that this amounted to substantial evidence to raise a doubt as to Lewis's incompetence.

Counsel's opinion on Lewis's competence did not itself compel a competency hearing. (*People v. Lewis* (2008) 43 Cal.4th 415, 525 (*Lewis*), overruled on another ground in *Black*, *supra*, 58 Cal.4th at pp. 919-920; *Ghobrial*, *supra*, 5 Cal.5th at p. 270; *Panah*, *supra*, 35 Cal.4th at p. 433.) Nor did the sudden change in the way that Lewis interacted and communicated with counsel. "Voluntary barriers to communication with counsel on the part of a defendant who was able to cooperate do not demonstrate incompetence." (*People v. Mendoza* (2016) 62 Cal.4th 856, 879.) There is no evidence that Lewis's sudden shift in the way that he communicated with counsel resulted from an inability to communicate rather than mere unwillingness. (*Lewis*, *supra*, at p. 526; *People v. Nelson* (2016) 1 Cal.5th 513, 560; *Mai*, *supra*, 57 Cal.4th at p. 1034 ["an

uncooperative attitude is not, in and of itself, substantial evidence of incompetence"].) Although Lewis was not verbally communicating with counsel in the same manner in which he had previously, Lewis did still communicate with counsel. For example, Lewis told counsel on May 26, 2022—the day that the prosecution rested—that he did not want to testify. Lewis reiterated that sentiment before the hearing on May 31, 2022, by affirmatively nodding his head in response to a question from counsel. Thus, Lewis was able to and did in fact communicate with his attorney. Lewis just did not communicate more information than was minimally necessary to indicate his changed preference on testifying. Lewis's refusal to explain why he changed his mind about testifying does "not necessarily suggest he lacked the requisite ability to participate rationally in his defense." (*Mai*, at p. 1036.) Moreover, the trial judge observed Lewis interacting normally with the custodial officer after the jury was excused, thus indicating that Lewis was capable of communicating appropriately when he chose to do so.

The fact that Lewis's sudden decision not to testify caused a dramatic change in Lewis's trial strategy and left him with "no defense" also does not necessarily raise a doubt as to Lewis's competence. (See *Blair*, *supra*, 36 Cal.4th at p. 718 ["we have rejected the notion that a defendant's choice not to present a defense, even at the penalty phase, amounts to substantial evidence of incompetence"]; *People v. Bradford* (1997) 15 Cal.4th 1229, 1373 (*Bradford*) [the defendant's "changing preferences with regard to the extent of his own participation in the proceedings, and the extent to which a defense

would be presented," and "his eventual choice not to present a defense" were not sufficient to raise a doubt as to the defendant's competency].)

Defense counsel's suggestion that Lewis had suffered some unspecified past mental health issues also was not sufficient to raise a doubt as to Lewis's competence. Counsel's statement that Lewis "had some mental issues in the past when he was incarcerated in various state prisons" is not supported by any evidence. In any event, nonspecific evidence of past mental illness does not show that Lewis "was, as a result of his mental illness, unable to understand the nature and purpose of the criminal proceedings against him or conduct his defense." (*Mickel*, *supra*, 2 Cal.5th at p. 203; *People v. Hines* (2020) 58 Cal.App.5th 583, 605 [the defendant's "mental health problems and his seemingly delusional outbursts" do not "on their own, constitute substantial evidence compelling a competency hearing under section 1368"]; *Blair*, *supra*, 36 Cal.4th at p. 714 ["even a history of serious mental illness does not necessarily constitute substantial evidence of incompetence that would require a court to declare a doubt concerning a defendant's competence"].) There is no evidence that any past mental health issue had recurred or in any way affected Lewis's "competence to stand trial." (*Lewis*, *supra*, 43 Cal.4th at p. 525.)

In sum, statements from trial counsel about the sudden change in Lewis's interactions with counsel, Lewis's decision not to testify, which left him unable to claim self-defense, and counsel's unsupported assertions that Lewis suffered from unspecified

12

mental health issues in the past were not sufficient to raise a doubt as to Lewis's competence to stand trial.  (*Ghobrial*, *supra*, 5 Cal.5th at p. 270.)

For the foregoing reasons, we conclude that there was not substantial evidence before the trial court to raise a doubt concerning Lewis's competence to stand trial under section 1368.  The trial court accordingly was not required to order a section 1368 hearing.

C.      *Right to Testify*

Every criminal defendant has a constitutional right to testify in his or her ""'own defense, or to refuse to do so."''" (*People v. Carter* (2005) 36 Cal.4th 1114, 1198; *Bradford*, *supra*, 15 Cal.4th at p. 1332; *Rock v. Arkansas* (1987) 483 U.S. 44, 51.)  "The defendant may exercise the right to testify over the objection of, and contrary to the advice of, defense counsel." (*Bradford*, at p. 1332.)  The trial court is generally not required to obtain an express, personal waiver from a defendant who chooses not to testify.  (*People v. Bradford* (1997) 14 Cal.4th 1005, 1052-1053.)  Rather, the court "'may safely assume that a defendant, who is ably represented and who does not testify is merely exercising his Fifth Amendment privilege against self-incrimination and is abiding by his counsel's trial strategy . . . .'" (*Id.* at p. 1053.)  But if the court becomes aware of a conflict between the defendant and defense counsel concerning counsel's advice not to testify, then the court has a "duty to admonish and secure an on the record waiver" in order to ensure that the defendant understood the right to testify and made the ultimate decision not to exercise it.  (*In re Horton* (1991) 54 Cal.3d 82, 95; *Bradford*,

13

*supra*, 15 Cal.4th at p. 1332.)  We independently review whether Lewis's right to testify was infringed.  (*United States v. Jones* (7th Cir. 2016) 844 F.3d 636, 645.)

No conflict arose between Lewis and his trial counsel concerning counsel's advice not to testify, because counsel did not advise Lewis not to testify.  Rather, Lewis's 11th-hour decision not to testify deviated from counsel's trial strategy, which contemplated basing a claim of self-defense on Lewis's anticipated testimony.  Thus, insofar as there was any conflict between Lewis and his trial counsel, it arose from counsel's desire for Lewis to testify and Lewis's refusal.  Lewis cites no authority for the proposition that an express, personal waiver by the defendant is required in such circumstances, and we are aware of none.

Moreover, such a requirement would make no sense in this context.  The reason that an express waiver is required when there is a conflict over defense counsel's tactical preference for the defendant not to testify is that the court needs to confirm that the defendant has made the decision not to testify—the court must ensure that counsel has not prohibited the defendant's testimony against the defendant's will.  (*United States v. Pennycooke* (3d Cir. 1995) 65 F.3d 9, 12-13.)  But when the roles are reversed, and the conflict (if any) concerns counsel's tactical preference for the defendant to testify, then the defendant's silence itself provides ample confirmation that the defendant wishes to remain silent.

In any event, after declining to hold a competency hearing, the trial court directly asked Lewis whether he wished to testify.  When Lewis did not respond and the court

stated that it was construing the failure to respond as Lewis exercising his constitutional right not to testify, Lewis did not object or otherwise comment.  Under these circumstances, the court properly inferred waiver of the right to testify from Lewis's conduct.  (*United States v. Joelson* (9th Cir. 1993) 7 F.3d 174, 177 ["waiver of the right to testify may be inferred from the defendant's conduct and is presumed from the defendant's failure to testify or notify the court of his desire to do so"].)

We conclude that the trial court did not deprive Lewis of his constitutional right to testify by failing to secure an express, personal waiver of the right from Lewis.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ

J.


We concur:

RAMIREZ

P. J.

MILLER

J.